SHINSEKI V. SHINSEKI Next case is Roderick Stallworth v. DVA 2013-7044. We'll hear from Mr. Carpenter again. Thank you very much, Your Honor. Ma'am, please, the court. Here on behalf of Mr. Roderick Stallworth, who is appealing a decision of the Veterans Court which affirmed a decision which had severed his original grant of service connection. I think it's important at the outset that the court understand the issue, or excuse me, the result that is at issue in this case. This is kind of a reverse cue case, isn't it? It most certainly is, Your Honor. Clear and unmistakable evidence that there was not service. That the original decision to grant was essentially clear and unmistakable error, but in this context, based upon this court's decision in Andino, this court interpreted the VA's regulation at 3.105D to specifically impose particular requirements on those physicians that make the certification. But they didn't deal with all the evidence in Andino, right? Whereas here, they certainly did. They had four physicians and they… Oh, to the contrary, Your Honor. Those four physicians did not deal with all of the evidence, and that's wherein lies the problem, because in this case, there was not only an original finding of entitlement to service connection, but there was a finding that relates to the determination made about drug usage in a favorable line of duty determination, which is binding on the VA, which was not even mentioned, either by the examiners or by the decision that severed. But I thought your contention had to do with the clear, clearly and unmistakably erroneous standard, and you were not saying that this was a case like Andino where there was evidence that they didn't consider. Am I misunderstanding? No, Your Honor. You're correct. I was trying to respond to the analogy that Judge Laurie was making. So are you contending that the physicians have to use the magic words, clearly and unmistakably erroneous? Actually, I believe the magic words that they have to use are, we certify that the prior diagnosis was clearly erroneous based upon the accumulated evidence. Yes, I believe that that is what is expressly required by the VA's regulation. So even if, looking at the certification, you can conclude that that's in effect what they did, that's not sufficient. They have to use the right words. Well, I think there's a difference between in effect what they did or that's what they intended to do. In this case... Isn't that a harmless error? No, Your Honor, because in this case, we're talking about essentially a window here from 1979 to 1984. The VA agreed coming out of service, he was entitled to service connection. They agreed four years later that he was entitled to service connection. What we're dealing with here is just this narrow window in which they decided to change their mind based upon a single period of hospitalization in which they changed the diagnosis to rely upon drugs and that it was a drug-induced psychosis. That is simply a medical difference of opinion. That is not a certification that the prior diagnosis assigned. And this was not just a diagnosis that was assigned by the VA, this was a diagnosis that was assigned by the Army because the Army retired him and in fact had put him on retirement on TDRL within a month before the time in which this decision to sever was made. So what we're dealing with are direct conflicts within the record that that accumulated evidence as a matter of law, had it been considered, could not support the intention to find that the prior diagnosis was clearly erroneous. Because the predicate is that that prior diagnosis must be clearly erroneous based upon the accumulated evidence of record. And what these physicians focused on was their analysis based upon his post-service hospitalization. And they simply made a conclusion that they thought the prior diagnosis was wrong because it was obvious to them that this was a drug-induced psychosis. Yeah, but if they'd used the words clearly and unmistakably erroneous, you'd lose, right? Well, actually, I believe it's just clearly erroneous is the terminology in the regulation. In other words, if they certified. If they certified fairly erroneous, that would be sufficient. I do not believe so, Your Honor, under this court's decision in Andino. Because Andino requires more. Because the regulation requires more. The regulation requires that that determination must be made upon the accumulated evidence. And that phrase has to mean all of the evidence that was in the record at the time in which the decision was made. Did the Veterans Court say here that it could be based on something less than all of the evidence? Well, what they said was that although the board did not explicitly state whether the physician certified that the prior diagnosis was clearly erroneous, the board's analysis of that hospital report in which the physicians agreed that the diagnosis was in error and mistakenly made does not indicate to the court that the board committed any remandable error. That is a misinterpretation of 3.105. Because the board was required to state specifically whether or not the physicians had or had not certified that the prior diagnosis was clearly erroneous and that that clearly erroneous determination was based upon the accumulated evidence and not just based upon their analysis of the veteran during his period of hospitalization. But I thought that the board specifically indicated, and this is a large block quote in the Veterans Court opinion, that the doctors who made this certification in fact looked at the various in-service admissions and the previous status of the veterans. That it wasn't just what we saw while he was in our facility. Except that his previous admissions were the post-service admissions, Your Honor. What we're talking about is whether or not the decision to grant service connection, which was based not only on post-service but on in-service records. Yeah, but that's a fact question. I mean, this block quote says that they considered all the accumulated evidence. Maybe they were wrong about that, but that's a fact question, isn't it? That is a fact question, Your Honor. But the question here is whether or not when the Veterans Court said, although the board did not explicitly state whether the physician certified that the prior diagnosis was clearly erroneous, that that was okay under the regulation. Right, and that was okay because the board in 2010 found that the physician, that the earlier board decision concluded that the physician satisfied the statutory standard, the regulatory standard. But that finding is not consistent with the provisions of 3.105D, but more importantly... Well, why not? I mean, what the board said in 2010 is that there was a very substantial basis for the 1981 board to conclude that the January to March 1977 VA certifying medical certificate was adequate to meet the standard. Because that's not the standard under the regulation. It's not whether or not their analysis of what the physicians did based upon that period of hospitalization was adequate, because the breadth of the regulation is more encompassing than that. They have to actually use the words clearly erroneous, in your view. That's the problem, right? Absolutely, Your Honor. And I believe that that's what this court said in Andino, that if you don't use those words and you cannot point to evidence in the record to support that, then you cannot lawfully sever under your own regulation. That's it for the questions. We will save your time. Ms. Hogan. Good morning, Your Honors. May it please the court. This appeal should be dismissed because Mr. Stallworth has not presented a legal question within this court's jurisdiction. Although styling his appeal as one challenging the veterans' court... Well, sure. I mean, his legal question is he says they've got to use the words clearly erroneous, and they didn't. Why isn't that a legal question? I suppose that's the only potential legal question that was presented, but based upon the facts of what Mr. Stallworth... They didn't use the words clearly erroneous, did they? They did not, Your Honor. So, if he's right about that, you lose. I suppose that's a legal question, but it's not one that's presented within the context of this appeal, particularly because what the veterans' court... Why isn't it presented in the context of this appeal? Because what the veterans' court and what the board in 2010 was doing here was reviewing the 1981 decision for Q, which as this court knows is a very narrow exception to the rule of finality and requires very specific criteria to be met for it to be overturned. This is not a direct appeal that the board would be reviewing the severance de novo, and the veterans' court would be reviewing for... He says it was Q not to require that the doctors certify clearly erroneous. If he's right about that, it's Q. Well, if there was a legal error and one which was outcome determinative, then potentially it could be one that could constitute Q. But in this case, what we have is the facts, which are not reviewable. The board found that there were... They're not reviewing the facts. They didn't use the words clearly erroneous. I don't understand why you guys come here and argue these jurisdictional points instead of addressing the merits. I mean, he's raised a legal issue. He may be right about it. He may be wrong about it, but it's a legal issue. Well, I would be happy to address that question, Your Honor, although, again, I would contend that that's not, while a legal question, not one that's presented based upon the facts of this particular appeal. Well, of course it's presented. They didn't use the words clearly erroneous, right? But the veterans' court decision here did not say, did not, in fact, on page five of the veterans' court decision, the veterans' court said to the extent that there's any question of interpretation, you know, we don't think that the board made an interpretation of 3.105D1. But to the extent that they did, it was not, it was not air. This court has said over and over again that it's a substance of a regulation, a substance of a requirement. Mr. Stallworth here is arguing for them. In other words, in substance, they certified that it's clearly erroneous? And that was the conclusion that the board reached and the veterans' courts reached, to make a requirement. First, we don't believe that the language of the regulation itself requires that certain magic words be used. And again, as we noted in our response brief, that regulation is guidance for adjudicators, not guidance for medical professionals. It's the basis upon which the regional office, in the first instance, would have measured the quality and the strength of the 1970 non-report. What about the Andino point? Well, Andino simply states that in severing service connection, you have to consider all the evidence. The decision must be made in light of all the evidence. On page 143 of the board's decision, page 143 of the joint appendix, the board specifically said there was no prior favorable evidence of record that was not fully considered by these doctors. So, to the extent that that's a factual finding, not reviewable by the board, but one that suggests that there was not an error of the type made in Andino here. But Andino has rejected the argument that you're making. Andino is not saying that the clearly erroneous standard is for the adjudicator. Andino is saying that the certification has to be based on a clearly erroneous determination. What this course in Andino said was that it would be an error of an interpretation of 3.105D to permit severance on the basis of a physician letter that did not consider all the evidence accumulated. No, but they also say, in plain language, the regulation provides that service connection can only be terminated when a medical professional certifies that her review of all the evidence indicates that the prior diagnosis is, quote, clearly erroneous. So, Andino appears to say that there has to be a certification of clearly erroneous, as well as that it has to be based on all the evidence. What the Veterans Court in this case found... So it's not for the adjudicator, it's the doctors have to certify to that, right? Well, the doctor certainly has to express their opinion in a manner of some certainty that the prior diagnosis was made in error, and that has to be based upon all the accumulated evidence to that point. I think the point that we're discussing is, was the language in Andino too broad? It does appear to say that you actually have to have a physician who, in substance or form, makes a certain kind of assertion of rising to the level of clear error. I'm not sure that the regulation says that, but Andino does seem to say that. The question is, is there something about, putting aside its relevance to this case, is there something about the context of Andino's statement that makes it properly read as narrower? Because the regulation does say, here's one way to arrive at a severance. It doesn't say it's the only way to arrive at the severance. It appears to say the opposite. You know, Andino is the law of the circuit, so we are finding ways to distinguish it. Is it your comment that in the paragraph we've been discussing in Andino, there is italics, but not of the word certifies? The italicized portion is review of all the evidence. That would seem to be the strong point of that paragraph. I agree, Your Honor. And certainly that was the issue, I am sure, that troubled the court in Andino, was that there was significant evidence in that case that had not been considered and that severance was permitted on that basis. And in the prior paragraph, they quote CFR and they italicize light of all accumulated evidence. And was all the accumulated evidence here considered whereas it was not in Andino? I think that's precisely the distinction that we've tried to draw between this case and Andino and to show that to the extent that Andino does anything different or somehow illuminates 3.105D in a different way than the way we're reading it, certainly what the board and the Veterans Court did here was consistent with that. Specifically, and I think it's worth, again, noting that both the board and the Veterans Court in this case were charged with ensuring compliance. Your argument has to be that Andino, in saying that they have to certify that it's clearly erroneous, doesn't say that they have to use those words, just use the substance to make a certification that in substance is the equivalent of a finding that it's clearly erroneous. Right? Yes. Yes. And that's consistent with the regulation. We would certainly disagree that, right, that there's any magic words requirement that you have to, the doctors say I hereby certify in light of all accumulated evidence that the prior diagnosis was clearly erroneous. That conclusion can be reached by the substance of the medical report itself, which is what the board and the Veterans Court did in this case was find that it did need the substance and that there was no prior favorable evidence that was not considered when severance was originally made. So there's not, and again, I think this court has said over and over again, substance of reform, so I think it would be highly unusual to conclude that that regulation or Andino requires the use of any magic terminology. Rather, it's the substance of what the regulation is there for. I'm reading from the board's opinion. Furthermore, the doctors considered that his service-connected diagnosis to be an error and mistakenly made, sounds like the equivalent of certification, when the diagnosis should have been a psychosis with drug-poisoning intoxication. Is that what's relevant? Again, Your Honor, we agree that even if this court could directly review the substance of the medical report, which it clearly can, this medical report would be sufficient to meet the requirements of 3.105B based upon their clear statements that the prior diagnosis was an error, that this was based upon observation of four separate doctors over significant periods of time that did not indicate any psychiatric event during that time. And to Mr. Stallworth's earlier point, again, the point of cue is to look at that point in time at which the severance decision was made. So the court can't consider, and the Veterans Court and the board can't consider any evidence that came afterward in a cue claim. We're looking only at whether that 1981 board decision based upon the evidence that was before that 1981 board was cue. And in this context, the Veterans Court found that it was not, and it's that decision that we would respectfully request that the court affirm. Are there other cases pending that raise a similar issue? About the language used by the certifying physicians? Not to my recollection, Your Honor.  Thank you, Your Honor. Mr. Carpenter, I'm reading from the board's decision, from its opinion. The claims in that case and Deno included other evidence of record with no indication that the doctor had reviewed all the prior records. In the present case, however, the four doctors who signed the report described the veterans' past treatment, including treatment at that same facility. The result was an opinion based on all of the accumulated evidence. This distinction from and Deno underlies the reliance, et cetera. That's all facts, right? That is all facts, Your Honor. But that doesn't change the fact that that's not what these doctors did. They did not certify that the prior diagnosis was clearly wrong. But the board's review of what the doctors did is fact. We can't review. That's correct. But you can review the question of law that is presented by this appeal, which is whether or not the board and the Veterans Court relied upon a misinterpretation of 3.105D as interpreted by this court in and Deno. This court in and Deno said that the clearly erroneous requirement was a requirement of certification. That requirement was not met. And they can't recast it as though it was. What's the point? The precise use of the word certified? Actually, Your Honor, the point is that the VA granted and then they tried to take it away. And therefore, they should have a high evidentiary burden to demonstrate that their original decision was incorrect. In other words, the criteria for a reverse cue should be higher than for a cue. I'm not sure I would go quite that far. But at the very least, it should be equal in terms of the height of the burden or the weight of the burden on the VA. And the VA wrote the regulation. The VA said that what we require in order to do this is a certification that the prior diagnosis was clearly erroneous. That's not in this record. If it's not in this record and they affirmed or denied the cue and then affirmed the denial of cue, that relied upon a misinterpretation of the regulation. But suppose we interpret the regulation and Andino is saying, no, the positions, the certified positions don't have to use the words clearly erroneous. It is sufficient if they say the same thing in substance using other words. Do you lose? Under that analysis, yes. Because that would, in my view, change both the interpretation made in Andino and change the regulation in position on the certified positions. If they had wanted to make it a lesser burden, they clearly could have written it as a lesser burden. To me, the key in Andino is its emphasis on the meaning of clearly erroneous or clear error. That it is a firm conviction that a mistake was made. That's not what was said here. They simply said, we disagree. And medical experts disagree all the time. And this case couldn't be a better example. Because they agreed before and they granted. They disagreed, so they took it away. Later, they agreed again that he was entitled. And it's not supposed to be that tennis match back and forth over the net. There is supposed to be a formidable burden, just like the formidable burden to establish that there was a clear and unmistakable error. They incorrectly applied the law here if they didn't require that certification as being clearly erroneous. Unless there's further questions, Joe? Thank you all very much. Thank you, Mr. Carpenter. The case will be taken under revising.